UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


JOHN W. BELL, ET AL.,           )
           )
         Plaintiffs,      )
           )      CIVIL ACTION NO.
VS.               )
           )      3:08-CV-0702-G
RAYTHEON COMPANY,     )
           )      **ECF**
         Defendant.      )


## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is the motion of the defendant, Raytheon Company ("Raytheon"), for summary judgment. For the reasons discussed below, the motion is granted.

## I. <u>BACKGROUND</u>

The three plaintiffs in this case, John Bell ("Bell"), Robert Highland ("Highland"), and Carl Cox ("Cox"), are all employees of Raytheon who work in the Human Resources ("HR") Department. Defendant's Brief in Support of its Motion for Summary Judgment ("Motion") at 5. All three allege that Raytheon discriminated against them due to their age. *Id.* at 1-2. As a result, they have filed suit against

Raytheon under the Age Discrimination in Employment Act ("the ADEA"), 29

U.S.C. § 621 *et seq.*, and the Texas Commission on Human Rights Act ("the

TCHRA"), TEX. LABOR CODE § 21.001 *et seq.*  Plaintiff's Original Complaint and Jury

Demand ("Complaint") at 1.  Each plaintiff asserts an individual claim, and together,

they assert a claim for hostile work environment and back pay .  *Id.* at 9-14.  Bell and

Cox are 58 years old; Highland is 62.  *Id.* at 1-2.

In June of 2007, Raytheon hired a new vice president of HR: John Malanowski

("Malanowski").  Motion at 5.  The plaintiffs, who work under Malanowski, claim

that after his arrival at Raytheon, the conditions of their "employment took a drastic

turn for the worse."  Plaintiff's Brief in Opposition to Raytheon Company's Motion

for Summary Judgment ("Response") at 4.  They allege that he "subjected [them] to a

steady barrage of unfair criticism, humiliating character attacks, belittling comments,

and condescending treatment."  *Id.*  This treatment, along with other incidents

discussed below, prompted the plaintiffs to file suit.  The facts giving rise to each

individual claim are set out below.

### A.  Carl Cox

Cox claims Raytheon discriminated against him individually when the

company turned him down for a promotion.  In May of 2007, the HR department

was looking to fill a Senior Manager position at Raytheon's facility in Aurora,

Colorado.  Response at 13.  Cox submitted an application for this position.  *Id.* at 14.

Malanowski's predecessor, Tim Harris ("Harris"), believed Cox was a strong candidate for the position and recommended to Malanowski that Cox be seriously considered.  *Id.*  Malanowski, however, disagreed.  He stated several times that he believed Cox was not qualified for the position.  *Id.* at 15-16.

Susan Rogers ("Rogers"), in her late 40s at the time, also applied for the job, and was ultimately successful.  *Id.* at 15.  Cox believes Raytheon chose Rogers only because of her age.  *Id.*  He contends that the defendant did not take his application seriously as a result of his age and gave it nothing more than a "cursory eye," despite the fact that both Bell and Harris strongly recommended him.  *Id.* at 16.  Raytheon, on the other hand, contends that Rogers' selection had nothing to do with either Rogers' or Cox's age.  Motion at 11.  Rather, the defendant asserts, Rogers was simply more qualified for the position.  *Id.*

## B.  Robert Highland

Highland's individual claim arises out of a final written warning he received for mishandling a reduction in force ("RIF").  In preparation for the RIF, Highland and several others, including Malanowski, met to prepare a recommendation regarding who would be let go.  Response at 8.  After Malanowski and the others signed off on the recommendation, Highland began to notify the affected employees.  *Id.* at 9.  Highland believed he was following the usual RIF procedure by doing so.  *Id.*  Malanowski, however, later realized that Highland had told the affected employees

before a key official had seen the final RIF recommendation. *Id.* Upon realizing this, Malanowski called Highland into his office and "launched into a tirade." *Id.* The plaintiffs contend that Malanowski shouted at Highland for approximately twenty to thirty minutes and then threw Highland out of his office. *Id.* at 9-10. Malanowski suspended Highland until an outside investigation of the incident could be completed. *Id.* at 10.

Raytheon assigned Diana Green to investigate Highland's behavior. *Id.* at 11. She reported that Highland had complied with previous RIF procedures, but recommended he receive a written warning "for miscommunicating with Malanowski." *Id.* After receiving this recommendation, Malanowski issued Highland a final written warning. *Id.* A final written warning is the last step in Raytheon's progressive discipline process. *Id.* at 12. As a result, Highland felt that this was far too strict a punishment for an action he believed was not wrong in the first place. *Id.* at 12-13. Highland claims that this unfairly issued warning tarnished his service record.[1] *Id.* at 13.

---

[1] Both Bell and Highland also assert that they received final written warnings -- the second for Highland -- for allegedly disclosing company documents to a third party. Response at 21. They claim that Raytheon issued these warnings in retaliation for their filing the instant lawsuit. However, as the plaintiffs have not asserted a retaliation claim, the court gives no weight to this contention.

- 4 -

### C.  John Bell

Bell contends that Malanowski has gradually given away his duties to younger employees.  *Id.* at 18.  He asserts that since July of 2007, "Malanowski has reassigned nearly all of [his] principal duties away from him."  *Id.*  Rogers has taken over a portion of those duties.  *Id.*  In addition, Malanowski transferred oversight of the Garland HR department from Bell to Mike Novak, a "twenty-something."  *Id.*  As a result, Bell believes he "has lost considerable stature in the Garland HR department."  *Id.* at 19.

Bell also claims Malanowski has "trumped up a charge of inappropriate touching against [him]."  *Id.* at 21.  In March of 2008, Malanowski reprimanded Bell for allegedly touching a female co-worker in an inappropriate manner.  *Id.*  This touch consisted of Bell placing his hand on his co-worker's shoulder.  *Id.* at 21-22.  The co-worker later told Malanowski that the touch did not offend her.  *Id.* at 22.  Nonetheless, "Malanowski did not rescind the accusation or apologize to Bell for the false accusation."  *Id.*

### D.  The Collective Hostile Work Environment Claim

The hostile work environment claim arises out of the plaintiffs' general assertion that Malanowski flagrantly mistreated all three of them, but treated younger employees more favorably.  All three assert that Malanowski's behavior has driven them to the brink of quitting or retiring.  *Id.* at 22.  Each one "has experienced health

complications tied to Malanowski's campaign." *Id.*  The plaintiffs cite multiple

instances of Malanowski shouting at them without provocation and generally

degrading them. *Id.* at 7, 9, 12, 17, 19, 22.  In short, the plaintiffs believe that

"Raytheon has an evident preference for its younger personnel." *Id.* at 25.

### E.  Miscellaneous Comments and Business Practices the Plaintiffs View as Evidence of Ageism

In general, the plaintiffs cite the following as evidence of ageism at Raytheon:

First, the plaintiffs point to Raytheon's practice of identifying some employees as

"People on the Move" or "High Potential Employees." *Id.*  According to the

plaintiffs, only individuals who are 35 or younger may be included in this group.  Cox

contends that when several employees, all over 40, were nominated as "People on the

Move," he was instructed to remove these "more senior people" from the list. *Id.*

These older nominees were all replaced with employees under the age of 40. *Id.*

The plaintiffs also point to Raytheon's Leadership Development Program

("LDP") which was designed to develop the future leaders of Raytheon. *Id.*

Raytheon issued an internal publication entitled "An Interview with Keith Peden,

Senior Vice President, Human Resources" which discussed the LDP.  Appendix of

Evidence in Support of The Plaintiffs' Response ("Appendix to Response") at App.

65.  The plaintiffs point to several statements made in the interview. *Id.* at App. 65-

66.  In the interview, Keith Peden ("Peden") states that "The senior leadership team

and I have to get more comfortable working through generational layers.  We

- 6 -

understand that the younger generations can multitask and we need to use this to our advantage." *Id.* at App. 66. He also states that Raytheon is "getting better at offering stretch assignments to those in the younger generations."[2] *Id.* The plaintiffs interpret these comments as evidence of Raytheon's ageist attitude.

Bell also states in his declaration that Harris, Malanowski's predecessor, informed him that "the corporate office was 'looking for new blood' to move into Garland." Appendix to Response at App. 2. Harris relates that Peden and other officials pressured him to make changes to the Garland HR department's leadership team because it had become "stagnant." *Id.* at App. 115. In addition, Gary Hunt, a former Security Business Manager in the Garland HR department, states that Malanowski told him he intended to "reorganize the HR department and was going to find ways to do more with less, or more with cheaper people." *Id.* at App. 122.

## II. ANALYSIS

### A. The Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). The disposition of a case through

---

[2]     A stretch assignment is "an assignment that deliberately places an employee in a position where he or she is under-qualified so he/she can grow in his/her career." Declaration of John Bell ¶ 51, Appendix to Response at App. 17.

summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).  While all of the evidence must be viewed in a light most favorable to the nonmovants, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovants' summary judgment burden.  *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex*, 477 U.S. at 323.  The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  To carry this

burden, the "opponent[s] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovants must show that the evidence is sufficient to support a resolution of the factual issue in their favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovants cannot survive a motion for summary judgment, however, by merely resting on the allegations in their pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

## B. The ADEA Summary Judgment Standard

In the past, in a case such as this one, where direct evidence of discrimination is unavailable, the Fifth Circuit has allowed plaintiffs to prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). As modified, *McDonnell Douglas* consists of three stages. First, the plaintiffs must establish a *prima facie* case of discrimination, which "creates a presumption that the employer unlawfully discriminated against [them]." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for

any adverse employment actions taken against the employees.  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993).  If the defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to the plaintiffs to demonstrate that the reason produced was a pretext for discrimination.  *Id.*

Recently, however, the United States Supreme Court issued a decision that questions whether the *McDonnell Douglas* approach should be applied in ADEA cases.  *Gross v. FBL Financial Services, Inc.*, ___ U.S. ___, 129 S.Ct. 2343, 2349 n.2 (June 18, 2009).  In *Gross*, the Court held that, in ADEA cases, as opposed to Title VII cases, the plaintiff has the burden to "prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action."  *Id.* at 2352.  "The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision."  *Id.*  The court reached this decision by reasoning that the text of the ADEA, unlike the text of Title VII, "does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."  *Id.* at 2349.

As to whether this new holding prevents the use of the *McDonnell Douglas* framework, the Court stated only that it "has not definitely decided whether the evidentiary framework of [*McDonnell Douglas*] . . . is appropriate in the ADEA context."  *Id.* at 2349 n.2.  In a previous opinion, however, the Court stated that

although it "has not squarely addressed whether the *McDonnell Douglas* framework . . .

applies to ADEA actions," it is willing to apply the test where the parties do not

dispute the issue. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142

(2000). Further, the Fifth Circuit consistently applies the *McDonnell Douglas*

framework to ADEA cases, and Texas courts apply it to TCHRA claims. *Exxon Mobil*

*Corporation v. Hines*, 252 S.W.3d 496, 508 (Tex. App.--Houston [14th Dist.] 2008,

pet. den'd) (applying the *McDonnell Douglas* framework to TCHRA claims). For all

these reasons, the court will apply it here. However, the court will not shift the

burden to the defendant to articulate a legitimate nondiscriminatory reason unless

the plaintiffs show that age was the but-for cause of any adverse employment actions.

If the court reaches stage two, the defendant must articulate a legitimate

nondiscriminatory reason for the action taken against the plaintiff. *Hicks*, 509 U.S. at

506-07. If Raytheon is able to do so, the burden then shifts back to the plaintiffs to

demonstrate that the reason produced was a pretext for discrimination. *Id.* The

plaintiffs may satisfy this burden by showing "that the legitimate reasons offered by

[Raytheon] were not its true reasons, but were a pretext for discrimination." *Reeves*,

530 U.S. at 143 (2000) (quoting *Burdine*, 450 U.S. at 253). That is, the plaintiffs

must produce sufficient evidence for a reasonable trier of fact to find either that

Raytheon's proffered explanation is unworthy of credence or that a discriminatory

reason more likely motivated the adverse employment decision of which they

complain.  See *Burdine*, 450 U.S. at 256.  Even without direct evidence of age-motivated discrimination, if the plaintiff can provide sufficient evidence to permit a reasonable jury to conclude that Raytheon's proffered legitimate nondiscriminatory reason is unworthy of credence, Raytheon's motion for summary judgment must be denied.

## C.  Cox's Individual Claim

Cox's claim is based on Raytheon's hiring Rogers instead of him for the position in Colorado.  Motion at 10.  Initially, it should be noted that a plaintiff "need only make a very minimal showing" to establish a *prima facie* case.  *Thornbrough v. Columbus & Greenville Railroad Company*, 760 F.2d 633, 639 (5th Cir. 1985), overruled on other grounds by *St. Mary's*, 509 U.S. 502.  "In order to establish a prima facie case of age discrimination under the TCHRA in a non-selection or failure to hire case, [the plaintiff] must show that:  (1) he was in the protected class; (2) he was qualified for the position sought; (3) he was not selected; and (4) he was either (a) replaced by someone outside of the protected class; (b) replaced by someone younger; or (c) otherwise not selected because of age."  *McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457, 462 (5th Cir. 2005).  The same elements apply for the ADEA claim.  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

For both the ADEA and the TCHRA, Cox must have been over the age of 40 at the time of non-selection in order to be a member of the protected class. *McClaren*, 420 F.3d at 462 n.5.  It is undisputed that at the time Raytheon chose Rogers over Cox, Cox was over the age of forty and therefore within the protected class, thus satisfying the first and third elements of the *prima facie* case for discrimination.  The plaintiffs also assert that Cox was well qualified for the position.  Response at 13. According to the plaintiffs, the job required at least twelve years of HR experience, a bachelors degree in a relevant discipline, and a certain level of security clearance.  *Id.* Cox claims he possessed all these qualities and was therefore qualified for the job.  *Id.* at 14.  Raytheon does not dispute that Cox met these basic requirements.  Although Raytheon argues that Rogers was plainly a *more* qualified candidate than Cox, it does not assert that Cox was unqualified for the position.  Defendant's Reply in Support of its Motion for Summary Judgment ("Reply") at 6-9.  Thus, the second element is satisfied as well.  It is the fourth element over which the parties argue.

There are three ways for Cox to satisfy the fourth element.  *Machinchick*, 398 F.3d at 350.  The first way is not available to him.  Rogers, at the time she was hired, was 49 years old.  Response at 36.  As she was over forty at the time Raytheon hired her, she was not outside the protected class.  The second way requires that Rogers be younger than Cox.  *Machinchick*, 398 F.3d at 350.  Rogers is unquestionably younger than Cox; at the time Cox was denied the promotion, he was 56 years old and Rogers

was 49.  Response at 36.  However, not just any age difference will suffice for a *prima facie* case of age discrimination.  Instead, the law requires that the plaintiff was passed over in favor of someone *substantially* younger.  *O'Connor v. Consolidated Coin Caterers Corporation*, 517 U.S. 308, 312-13 (1996).

The Fifth Circuit has not issued a bright line rule on what age difference is "substantial."  *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988) ("The ADEA does not lend itself to a bright-line age rule.").  In *Bienkowski*, the plaintiff was five years older than his replacement.  *Id.*  The court stated that this five year age difference presented "a close question whether he established a prima facie case."  *Id.*  Ultimately, the court held that the plaintiff had made out a *prima facie* case of age discrimination, and reached this decision by factoring in the ages of both the plaintiff and his colleagues.  *Id.*  Since *Bienkowski*, the Fifth Circuit has stated again that a five year age difference is a "close question," but has yet to directly address whether five years is substantial.  *Rachid*, 376 F.3d at 313 (stating that a five year age difference is a close question, but declining to answer it because the plaintiff presented other evidence that easily established a *prima facie* case of age discrimination).  In light of the Fifth Circuit's reluctance to declare a five year age difference insubstantial, this court "is not prepared to declare an age difference of approximately seven years insubstantial as a matter of law."  *Cannon v. St. Paul Fire and Marine Insurance Company*, 2005 WL 1107372, *4 (N.D. Tex. May 6, 2005).

Thus, the court will assume that Cox's facts set forth a *prima facie* case of age discrimination.

Nonetheless, the court will not yet proceed to stage two.  Although the plaintiffs have sufficient evidence to demonstrate the four elements laid out above, they still must demonstrate that age was the but-for cause of Raytheon choosing Rogers over Cox.  *Gross*, 129 S.Ct. at 2352.  In support of their argument that Cox's non-selection was motivated by his age, the plaintiffs rely on the miscellaneous evidence discussed above, which they argue amounts to a general atmosphere of ageism at Raytheon.  *See* Response at 25.  This evidence consists of Raytheon's LDP, the "People on the Move" list, and a series of remarks.

Under Fifth Circuit law, age-related remarks "may serve as sufficient evidence of age discrimination if the offered comments are:  1) age related; 2) proximate in time to the [employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."  *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996).  Thus, the court must determine whether each remark the plaintiffs cite satisfies the *CSC Logic* test.

First, the plaintiffs cite Malanowski's use of the phrases "contemporary skills" and "next generation."  Response at 5.  Malanowski used these phrases in a PowerPoint presentation he made to the HR department soon after starting with Raytheon.  *Id.*  Malanowski's use of these two phrases is not sufficient evidence of age

discrimination.  Both phrases were included in Malanowski's introductory presentation to the entire HR department, which outlined his vision for the company. Appendix to Response at App. 141-143.  These statements were not proximate in time or related to the employment decision at issue, namely, whether Cox would receive the promotion.

Next, the plaintiffs assert that Harris, Malanowski's predecessor, told Bell that Raytheon's corporate office had concerns about "too much seniority" in the Garland, Texas office.  *Id.* at App. 2.  According to Bell, Harris told him that Raytheon was "looking for new blood" for the Garland office.  *Id.*  Harris also states that Peden and other officials pressured him to make changes to the Garland HR's department leadership team because it had become "stagnant."  *Id.* at App. 115.  None of these statements satisfies the *CSC Logic* test.  Bell does not even know who made the comment about "too much seniority."  *Id.* at App. 2.  Thus, the court cannot determine whether it was made by anyone who had authority over whether to hire Cox.  Moreover, it is not clear when either statement was made.  The remarks are presented entirely out of context, making it impossible to determine whether the statements were made at a time proximate to the decision to hire Cox, or whether they were related to the decision.  Neither statement is sufficient evidence of age discrimination.

The plaintiffs also cite Hunt's testimony that Malanowski told him he intended to "reorganize the [HR] department and [was going to] find ways to do more with less, or more with cheaper people." Response at 5. The plaintiffs argue that "[a] reasonable jury can infer that in the context of Raytheon's workplace, 'cheaper' people are younger." *Id.* at 28. Even if true, the statement is still insufficient to shift the burden to the defendants under the new standard laid out in *Gross*. At most, a reasonable juror could infer from Malanowski's statement that Raytheon intended to hire younger people *because* they were cheaper. In other words, Malanowski's statement reveals, at best, that Raytheon took age into account when making personnel decisions, but only because age often corresponded with salary. The Fifth Circuit has held that it is not discriminatory to make an employment decision based on employee's high salary as a result of his seniority. *Armendariz v. Pinkerton Tobacco Company*, 58 F.3d 144, 152 (5th Cir. 1995) (holding that even if a company took a plaintiff's high salary or "fast-approaching eligibility for retirement benefits" into account when making an adverse employment decision, "that would not be sufficient alone to support a finding of age discrimination because the ADEA prohibits discrimination on the basis of age, not salary or seniority"), *cert. denied*, 516 U.S. 1047 (1996). Thus, the statement shows, at most, that Raytheon had mixed motives -- one legitimate, one not. According to *Gross*, mixed motives are insufficient to shift the burden to the defendant. 129 S.Ct. at 2352. In any case, Malanowski

made this statement when discussing the overall budget of the HR department.

Response at 5.  Thus, it is far from clear that this statement was in any way related to

the decision not to hire Cox.  For these reasons, Malanowski's statement is not

sufficient to establish age discrimination.

Next, the plaintiffs cite Raytheon's LDP, which was designed to develop the

future leaders of Raytheon.  Response at 25.  The court refuses to hold that a

program designed to foster the future leaders of an organization is evidence of age

discrimination.  Even if the court did so hold, the plaintiffs have not alleged that the

LDP had anything to do with Cox's non-selection.  In short, the court views the

existence of the LDP as irrelevant to Cox's claim.

The plaintiffs also point to the statements Peden made regarding Raytheon's

LDP.  *Id.*  The statements made in Peden's interview do not meet the *CSC Logic* test.

The interview appears in a publication issued by Raytheon that explains and discusses

the LDP.  This publication clearly bears no relation to the decision not to hire Cox.

Further, the statements made in the interview do not reflect an ageist attitude.

Peden's statement that "younger generations can multitask," follows his statement

that "[t]he senior leadership team and I have to get more comfortable working

through generational layers."  Appendix to Response at App. 66.  This suggests that

the company has had to make an effort to find the good in the younger generation.

The statement certainly does not imply that the younger generation's ability to

multitask has induced the company to replace older employees with younger ones. Peden's comment that Raytheon is "getting better at offering stretch assignments to those in younger generations" suggests nothing more than that the company is making an effort to foster its younger generation. *Id.*  It certainly does not imply that it favors the younger generation over older or more established employees.  No reasonable juror could find otherwise.  Thus, these statements by Peden do not meet the *CSC Logic* test.

Finally, the plaintiffs point to Raytheon's list of "People on the Move." Response at 25.  According to Bell, Raytheon uses this list to evaluate employees in their reviews.  The plaintiffs do not assert, however, that Malanowski used this list in deciding whether to hire Rogers or Cox.  Further, Bell asserts that it was Mike Keebaugh, who the plaintiffs have not alleged was involved in the hiring process for the Colorado position, who directed that, in general, only individuals under 35 be included on the list.  Response at 25; Appendix to Response at App. 16.  Thus, there is no indication that this list had any connection with Cox not being selected for the job.

In short, none of the evidence presented by the plaintiffs is sufficient to create a genuine issue of material fact as to whether Cox was not selected due to his age. The plaintiffs have presented a series of remarks, none of which is in temporal proximity -- or in any other way related -- to the decision not to hire Cox.  Moreover,

- 19 -

the plaintiffs do not allege that the business practices they cite -- the LDP and the "People on the Move List" -- were in any way related to the decision to hire Cox. Although the plaintiffs have stated a *prima facie* case of age discrimination, the court need not reach stage two because the plaintiffs have not shown by a preponderance of the evidence that age was the but-for cause of Cox's non-selection.  The motion for summary judgment on this claim is therefore granted.

### D.  Highland's Individual Claim

Highland claims Raytheon discriminated against him because of his age after he allegedly mishandled an RIF.  *See* Response at 9-11.  Raytheon chastised Highland after he informed affected employees of the RIF before all the proper officials had signed off on the RIF.  *Id.*  Highland argues that the final written warning he received as punishment for this conduct was too harsh.  *Id.* at 12-13.  He believes that the only reason he received such a harsh punishment is his age.

The defendant argues Highland cannot make out a *prima facie* case of age discrimination because he has not suffered an adverse employment action.  Motion at 12.  Highland alleges that Raytheon issued him a final written warning and temporarily suspended him with pay pending an investigation of the incident.  *Id.* Raytheon argues that, as a matter of law, these allegations do not amount to an adverse employment action.  The court agrees.

To establish a *prima facie* case of discrimination under the ADEA and TCHRA, the plaintiff must establish that he suffered an adverse employment action. *Cheatham v. Allstate Insurance Company*, 465 F.3d 578, 583 n.4 (5th Cir. 2006). The Fifth Circuit has held that an adverse employment action is an action that "would 'tend to' result in a change of [the plaintiff's] employment status, benefits or responsibilities." *Martin v. Lennox International Inc.*, 2009 WL 2134908, *2 (5th Cir. July 16, 2009) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 407 (5th Cir. 1999)). Highland's employment status never changed; nor did his benefits or responsibilities. Although the plaintiffs assert that Raytheon issued Highland a final written warning and placed him on suspension with pay, neither of these actions are adverse employment actions under Fifth Circuit law. *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir.) (placing an individual on administrative leave with full pay does not constitute an adverse employment action), *cert. denied*, 531 U.S. 816 (2000); *Mattern v. Eastman Kodak Company*, 104 F.3d 702, 708 (5th Cir.) (holding that a verbal threat of termination, a reprimand, and placing the employee on "final warning" did not constitute an adverse employment action for purposes of a retaliation claim), *cert. denied*, 522 U.S. 932 (1997), abrogated on other grounds by *Burlington Northern and Santa Fe Railway Company v. White*, 548 U.S. 53 (2006). The same is true for Texas law. *Olivarez v. University of Texas at Austin*, 2009 WL 1423929, *3 (Tex. App.--Austin May 21, 2009, no pet.) (applying federal law to define "adverse employment

action" within the meaning of the TCHRA and concluding that a "'demotion without change in pay, benefits, duties or prestige' or 'reassignment to [a] more inconvenient job' are all insufficient to constitute a tangible or material adverse employment action.") (quoting *Brierly v. Deer Park Union Free School District*, 359 F.Supp.2d 275, 294 (E.D. N.Y. 2005)) (internal quotation omitted).

Thus, none of the actions taken against Highland constitute an adverse employment action. Highland has not stated a *prima facie* claim of age discrimination under either the ADEA or the TCHRA. The court need not progress to stages two and three. The defendant's motion for summary judgment on Highland's individual claim is granted.

### E.  Bell's Individual Claim

Bell claims that Raytheon transferred many of his duties to younger employees. Response at 38. Specifically, he asserts that Rogers has taken over support of the Australia site, and that a twenty-something staff executive has assumed supervisory responsibility for the Garland HR department. *Id.* at 18. He contends that this transfer of responsibilities has caused him to lose "considerable stature in the Garland HR department." *Id.* at 19. He claims he used to be the go-to person for any HR issues, whereas now "the business unit Vice Presidents . . . rarely seek him out to resolve problems." *Id.*

Raytheon argues that even if everything Bell asserts is true, he has still not stated a *prima facie* age discrimination claim.  It contends that Bell has not suffered an adverse employment action.  Motion at 13.  As stated earlier, a *prima facie* claim of age discrimination requires that the plaintiff suffered an adverse employment action. *Cheatham*, 465 F.3d at 583 n.4.  An adverse employment action is an action that "would 'tend to' result in a change of [the plaintiff's] employment status, benefits or responsibilities."  *Martin*, 2009 WL 2134908 at *2.  Bell's employment status never changed; nor did his benefits.  He contends only that his responsibilities have changed.  The Fifth Circuit, however, has been clear that "the loss of some job responsibilities does not qualify as an ultimate employment decision."  *Williams v. U.S. Department of Navy*, 149 Fed. Appx. 264, 269 (5th Cir. 2005) (holding that plaintiff had not suffered an adverse employment action where she had merely been relocated and had twenty percent of her job duties removed without a reduction in pay); see also *Mota v. University of Texas Houston Health Science*, 261 F.3d 512, 521 n.17 (5th Cir. 2001) (holding that ostracism from other employees is not an "ultimate employment decision"); *Watts v. Kroger Company*, 170 F.3d 505, 512 (5th Cir. 1999) (reasoning that a change in schedule and assignment to new tasks was not an adverse employment action); *Roberts v. Unitrin Specialty Lines Insurance Company*, 2008 WL 3832223, *9 (N.D. Tex. Aug. 14, 2008) (holding that taking away one project from the plaintiff did not constitute an adverse employment action).

Although Bell claims that he has been essentially replaced by younger employees, including Rogers, the court disagrees. The capstone of Bell's assertion that he has been replaced comes from his claim that he is no longer the "go-to guy" and has very little contact with the company's Vice Presidents. Response at 38. This is nothing more than a claim of ostracism in the workplace. The Fifth Circuit has specifically held that ostracism is not an ultimate employment decision. *Mota*, 261 F.3d at 521 n.17.

Bell also asserts that Malanowski "trumped up" a charge of inappropriate touching against him. Response at 21. In March of 2008, Malanowski reprimanded Bell for allegedly touching a female co-worker in an unwelcome manner. *Id.* Bell argues that he merely placed his hand on his co-worker's shoulder, and that the touch was purely platonic and not unwelcomed by his co-worker, who was a long-time friend of Bell's. *Id.* at 21-22. Even if Bell is correct that Malanowski "trumped up" charges that were entirely unwarranted, Fifth Circuit law has been interpreted to mean that false accusations do not constitute an adverse employment action. *Ellis v. Crawford*, 2007 WL 1624773, *5 (N.D. Tex. June 6, 2007) (stating that "false accusations, criticism, and investigations are not adverse employment actions") (citing *Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5th Cir. 2000) ("Stigma, by itself, with out an impact on one's employment, does not constitute adverse employment action.")); see also *Roberts*, 2008 WL 3832223 at *9 (citing *Ergo v.*

*International Merchant Services, Inc.*, 519 F.Supp.2d 765, 780 (N.D. Ill. 2007), for the

proposition that an allegedly false accusation of viewing pornography at work was too

minor to constitute an adverse employment action).  Thus, even if Malanowski did

falsely accuse Bell of inappropriate touching, thereby stigmatizing him or subjecting

him to criticism, such an accusation is not an adverse employment action under Fifth

Circuit law.  Bell has therefore not stated a *prima facie* case of age discrimination.  The

defendant's motion for summary judgment on Bell's individual claim is granted.

## F.  The Hostile Work Environment Claim

The plaintiffs collectively bring a claim of hostile work environment.  This

claim is based on the plaintiffs' assertion that Raytheon "has an evident preference

for its younger personnel."  Response at 25.  In support of this contention, the

plaintiffs assert that, in general, Malanowski was abusive and derogatory towards

older employees, but treated younger employees more favorably.  Response at 30.

They point to several instances of Malanowski yelling at and generally degrading the

plaintiffs.  *Id.* at 7, 9, 12.  In the first instance, in response to a joke made by Cox

after a group meeting, Malanowski crossed the room to stand close to Cox and

"proceeded to berate Cox for several minutes in front of the whole gathering."

Response at 7.  After this "public drubbing," Cox felt humiliated.  *Id.* at 7-8.  The

second instance the plaintiffs refer to involved Malanowski "launch[ing] into a

tirade," yelling at Highland for his mishandling of the RIF.  *Id.* at 9-10.  In the

plaintiffs' next example, Malanowski shouted at Bell after Bell allowed Highland to

return to work after his suspension without first giving him a copy of the written

warning.  *Id.* at 12.  These first three examples are very specific.  More generally, the

plaintiffs also allege that Malanowski routinely belittled Cox and his comments and

recommendations, "talked down to him, and implied that he was incompetent."  *Id.*

at 17.  They also assert that Malanowski challenges every statement the plaintiffs

make and questions their truthfulness.  *Id.* at 19.  Finally, the plaintiffs point to the

miscellaneous evidence discussed above: Raytheon's LDP, the "People on the Move"

list, and the remarks made by Malanowski, Peden, Hunt, and Harris discussed earlier

in connection with Cox's individual claim.  Raytheon argues that none of this

evidence is sufficient to support a hostile work environment claim.  The court agrees.

A hostile work environment claim requires the a plaintiff to show the

following:  (1) the employee belongs to a protected group; (2) the employee was

subject to harassment; (3) the harassment complained of was based upon the

employee's belonging to a protected group; (4) the harassment complained of affected

a term, condition or privilege of employment, *i.e.*, the harassment was "sufficiently

severe or pervasive so as to alter the conditions of employment and create an abusive

working environment;" and (5) the employer knew or should have known of the

harassment and failed to take prompt remedial action.  *Watts*, 170 F.3d at 509.  The

fifth element is irrelevant, however, where the plaintiff alleges that a supervisor with

immediate authority over the employee is the one harassing the plaintiff.  *Id.*  Here, the plaintiffs allege that their supervisor, Malanowski, was the one harassing them. Thus, they need not satisfy the fifth element.

However, the plaintiffs have not stated a *prima facie* claim of hostile work environment because they have not satisfied the third and fourth elements.  To begin with, the plaintiffs have presented no evidence that any of the incidents discussed above were related to their age.  In fact, two of the instances the plaintiffs cite involve Malanowski chastising Highland and Bell for their mistakes or perceived incompetency.  Response at 9-10, 12.  This suggests that the incidents arose out of Malanowski's anger that the plaintiffs had failed to follow protocol or to live up to his standards, not out of their age.

Moreover, the plaintiffs' general assertion that Malanowski belittled them constantly and routinely questioned their truthfulness is too vague to support a finding of hostile work environment.  In *Wallace v. Texas Tech University*, 80 F.3d 1042, 1049 and n.8 (5th Cir. 1996), the court held the plaintiff's allegation that the defendant "routinely [made] racist remarks," treated the plaintiffs in a "very demeaning manner" and used "hostile and profane" language insufficient to create a fact issue on whether the defendant had fostered a hostile work environment.  The court reasoned that there must be some specific evidence of racist remarks.  *Id.*  Here,

not only is the plaintiffs' assertion that Malanowski routinely made belittling remarks too vague, they do not even assert that these belittling comments were age related.

Further, claims of yelling and harsh words have been held insufficient to state a claim of hostile work environment. *Ramsey v. Henderson*, 286 F.3d 264, 266-68 (5th Cir. 2002) (agreeing with the district court that yelling, sharp looks, and calling the plaintiff a liar and a disloyal employee in front of co-workers and customers was insufficient to state a claim of hostile work environment); *Gonzalez v. Geren*, 2009 WL 522935, *12-13 (W.D. Tex. Jan 12, 2009) (finding the plaintiff's evidence that defendant "yelled at her, acted insensitively to her concerns, berated her for her failure to follow orders, demanded that she comply with his orders immediately, and then reprimanded her when she failed to follow orders" insufficient for a hostile work environment claim). *Geren* contains language particularly relevant to this case. There, the court stated that, although the plaintiff had shown the defendant to be "a zealous, hard-driving taskmaster, one who lost his temper on occasion, and had exceedingly high expectations of his subordinates . . . [s]uch behavior, while perhaps difficult to work under, is not against the law." *Geren*, 2009 WL 522935 at *12. Here, the plaintiffs have shown exactly this. Their evidence demonstrates that Malanowski lost his temper, sometimes inexplicably, and was prone to yell and belittle when the plaintiffs failed to follow protocol or live up to his expectations. Such behavior, however, is not against the law.

- 28 -

Finally, the court holds that the miscellaneous evidence of ageism, *i.e.* the remarks and business practices, do not support the plaintiffs' collective claim of hostile work environment.  Raytheon's LDP and the comments Peden made regarding that program, the "People on the Move" list, and the comments made by Peden, Malanowski, Harris, and Hunt do not qualify as harassment.  Black's Law Dictionary defines harassment as "Words, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose."  BLACK'S LAW DICTIONARY 721 (7th ed. 1999).  The remarks discussed above, the LDP, and the "People on the Move" list are not words, conduct, or action directed at a specific person.

For these reasons, the defendant's motion for summary judgment on the plaintiffs' hostile work environment claim is granted.

## G.  The Back Pay Claim

The defendants also move for summary judgment on the plaintiffs' claim for lost wages and other employment benefits.  Motion at 18-19.  Under Fifth Circuit law, "[b]ack pay encompasses what the plaintiff would have received in compensation but for the employer's violation of the ADEA."  *Palasota v. Haggar Clothing Company*, 499 F.3d 474, 482-83 (5th Cir. 2007).  Here, the court has concluded that the plaintiffs have failed to show any violation of the ADEA or TCHRA.  Thus, the

defendant's motion for summary judgment on the plaintiffs' claim for back pay is granted.

### III.  CONCLUSION

For the reasons discussed above, the defendant's motion for summary judgment is **GRANTED**.  Judgment will be entered for the defendant.

**SO ORDERED**.

July 31, 2009.

A. JOE FISH
**Senior United States District Judge**